IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

**DAVID BEAN,**
**MICHAEL HARRIS,** and
**JOSHUA THORPE,**                          Case No. 14-cv-12536
                                            Hon. THOMAS L. LUDINGTON
                    Plaintiffs,

v.

**DOUG & MATTHEW HOME**
**REMODELING, LLC,** and
**DOUG WOODRING,**

                    Defendants.

---

**GOLD STAR LAW, P.C.**            **THE LAW OFFICE OF PETER**
**Caitlin E. Malhiot (P76606)**    **ALBERTINS, PLC**
**Maia E. Johnson (P40533)**       **Peter Albertins (P48886)**
**David A. Hardesty (P38609)**     Attorney for Defendants
Attorneys for Plaintiffs           30773 Milford Rd., Ste. 117
2701 Troy Center Dr., Ste. 400     New Hudson, MI 48165
Troy, MI 48084                     (248) 207-4308
(248) 275-5200                     *pralbertins@live.com*
*cmalhiot@goldstarlaw.com*
*mjohnson@goldstarlaw.com*
*dhardesty@goldstarlaw.com*


**KIM A. HIGGS (P25376)**
Attorney for Defendants
1001 Center Avenue
Bay City, Michigan 48708
(989) 892-0114
*Kimhiggs@aol.com*

---

**DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSION OF LAW**

1

## <u>PROPOSED FINDINGS OF FACT</u>

1. This action was brought by three individuals pursuant to the provisions of the Fair Labor Standards Act claiming that Defendant violated the act by failing to pay them overtime pay. (Complaint at pages 4-5)

2. Plaintiff David Bean (Bean) is a resident of Saginaw County, State of Michigan. (Complaint at page 2)

3. Plaintiff Michael Harris (Harris) is a resident of Shiawassee County, State of Michigan. (Complaint at page 2)

4. Plaintiff Joshua Thorpe (Thorpe) is a resident of Shiawassee County, State of Michigan. (Complaint at page 2)

5. Defendant, Dough & Matthew Home Remodeling, LLC, is a Michigan Limited Liability Company with its place of business in the County of Genesee, State of Michigan. (Complaint at page 2)

6. Defendant, Douglas Woodring, is the resident agent, member and manager of Defendant, Dough & Matthew Home Remodeling, LLC. (Complaint at page 2)

7. The Complaint in this action was filed on June 27, 2014. (Complaint at page 1)

8. Plaintiff Bean first began providing services to Defendant in the spring of 2011. (Bean Deposition Transcript at page 3)

9. Plaintiff Bean quit providing services to Defendant in 2012; however, in his deposition, he was unable to provide the date. (Bean Deposition Transcript at pages 9-10)

10. When Bean first began providing services to Defendant, he was paid $350 a week and he was paid that rate for two or three months.  (Bean Deposition Transcript at page 9)

11. After three months, Bean was paid $425.00 per month. (Bean Deposition Transcript at page 9)

12. Bean's first term of service for Defendant concluded in 2011 and he worked for a second period of time beginning in January of 2012 and concluding after five months. (Bean Deposition Transcript at page 11)

13. Bean did not report his income to the IRS. (Bean Deposition Transcript at page 13)

14. Bean was paid by check from the Defendant. (Bean Deposition Transcript at page 16)

15. Bean did not keep track of the hours he worked in 2011. (Bean Deposition Transcript at page 13)

16. Bean did not keep track of the hours he worked in either 2011 or 2012. (Bean Deposition Transcript at page 13)

17. Bean was not provided any benefits by the Defendants. (Bean Deposition Transcript at page 13)

18. Bean did not have to keep a time card while he worked for Defendants. (Bean Deposition Transcript at page 20)

19. Bean provided mainly painting services for Defendants, although he also hung drywall and finished drywall. (Bean Deposition Transcript at page 13)

20. Bean did not work for anyone else in 2011 other than Defendants. (Bean Deposition Transcript at page 14)

21. Bean did not bring his own tools to the job site. (Bean Deposition Transcript at page 18)

22. Michael R. Harris performed services for Defendants in months of April and May of 2012. (Deposition Transcript of Michael R. Harris at page 6)

23. Harris was paid $325.00 per week by Defendants. (Deposition Transcript of Michael R. Harris at page 7)

24. Harris did not file taxes in 2012 or 2013. (Deposition Transcript of Michael R. Harris at page 7)

25. When Harris filed an income tax return which covered a three year period, including 2012 and 2013, he did not declare the income he had received from Defendants. (Deposition Transcript of Michael R. Harris at page 7)

26. Harris did not keep track of the hours he worked for Defendants in 2012. (Deposition Transcript of Michael R. Harris at page 10)

27. Harris did not keep track of the hours he allegedly worked on Saturdays or for the time he allegedly worked in the evenings burning trash. (Deposition Transcript of Michael R. Harris at page 10)

28. Harris did not fill out a job application when he began working for Defendants. (Deposition Transcript of Michael R. Harris at page 11)

29. Harris did not speak with Doug Woodring very often. (Deposition Transcript of Michael R. Harris at page 11)

30. Harris did not provide his own tools when he provided services to Defendants. (Deposition Transcript of Michael R. Harris at page 11)

31. Harris provided services to Defendants which were described as general labor, including painting and cleanup. (Deposition Transcript of Michael R. Harris at page 11)

32. Harris was not provided any fringe benefits by Defendants. (Deposition Transcript of Michael R. Harris at page 11)

4

33. Plaintiff Thorpe began his employment with Defendants on or around January 2009 and ended his work for Defendants in April of 2014. (Deposition Transcript of Joshua Thorpe at pages 8 and 14)

34. Thorpe never kept records of the hours he worked for Defendants. (Deposition Transcript of Joshua Thorpe at page 27)

35. Thorpe was provided a 1099 for all years of service he provided Defendants. (Deposition Transcript of Joshua Thorpe at pages 19-20)

36. Thorpe provided various services for Defendants including wiring, plumbing, drywall, finish work, installation of kitchen cabinets, countertops, windows, doors, building walls and roofs. (Deposition Transcript of Joshua Thorpe at page 20)

37. Thorpe did not normally provide any tools when he worked for Defendants. (Deposition Transcript of Joshua Thorpe at pages 22-23)

38. Thorpe did not keep any records of the hours he worked for Defendants for any year of his service. (Deposition Transcript of Joshua Thorpe at page 27)

39. When Thorpe began providing services to Defendants, he was paid $500 a week. (Deposition Transcript of Joshua Thorpe at page 9)

40. Defendants kept no time records of the hours worked by any Plaintiff.

41. Defendants dispute the claim that Plaintiffs are entitled to overtime compensation because they claim that Plaintiffs were independent contractors rather than employees pursuant to the provisions of the Fair Labor Standards Act and further Defendants dispute that Plaintiffs worked the number of hours of overtime they claimed.

## PROPOSED CONCLUSIONS OF LAW

5

1. Under the Fair Labor Standards Act employers must pay their employees overtime for hours worked in excess of forty in a workweek.  *Misewicz v. City of Memphis, Tenn*. 771 F.3d 332, 333-34 (6th Cir. 2014) (citing 29 U.S.C. § 207(a)(1))

2. Plaintiffs have the burden of proving that their employer violated the Fair Labor Standards Act.   *Herman v. Palo Group Foster Home, Inc*. 183 F.3d 468 ( 6th Cir. 1999)

3. Under the FLSA, only employees are entitled to overtime and minimum-wage compensation. *Keller v Miri Microsystems LLC* 781 F.3d 799 (6th Cir. 2015) citing *Ellington*, 689 F.3d at 553.

4. Independent contractors do not enjoy FLSA's protection. *Keller v Miri Microsystems LLC* 781 F.3d 799 (6th Cir. 2015) citing *Rutherford*, 331 U.S. at 729, 67 S.Ct. 1473.

5. Under 29 U.S.C. § 216(b), an employee may bring a private action against an employer for unpaid overtime or minimum wages. This provision does not authorize employee suits for violations of the FLSA's recordkeeping requirements. Authority to enforce the Act's recordkeeping provisions is vested exclusively in the Secretary of Labor. *See* 29 U.S.C. § 217 (authorizing the Secretary to initiate injunction proceedings to restrain any violation of 29 U.S.C. § 215, including 29 U.S.C. § 215(a)(5), which makes it unlawful for an employer to fail to comply with the recordkeeping requirements contained in 29 U.S.C. § 211(c)); *see also Powell v. Florida,* 132 F.3d 677, 678 (11th Cir.), *cert. denied,* 524 U.S. 916, 118 S.Ct. 2297, 141 L.Ed.2d 158 (1998) (noting that Secretary has exclusive authority to bring suit under § 217). *Elwell v. University Hospitals Home Care Services*, 276 F.3d 832 (6th Cir. 2002)

6

6.  To prevail in an FLSA overtime suit, a plaintiff must prove, by a preponderance of the evidence, that he "performed work for which he was not properly compensated." *Moran v. Al Basit LLC* –F.3d---, 2015 WL 3448655, (6th Cir. 2015) citing *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *superseded by statute on other grounds,* Portal–to–Portal Act of 1947, Pub.L. No. 80–49 § 4(a), 61 Stat. 86–87 (codified at 29 U.S.C. 254(a)), *as recognized in Integrity Staffing Solutions, Inc. v. Busk,* ––– U.S. ––––, 135 S.Ct. 513, 516–17, 190 L.Ed.2d 410 (2014).

7.  A plaintiff generally has the burden of proving that his employer violated the FLSA. However, where the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) (quoted and reaffirmed in *United States Dep't of Labor v. Cole Enters., Inc.,* 62 F.3d 775, 779 (6th

Cir.1995)), superseded by statute on other grounds as stated in *Carter v. Panama Canal Co.,* 463 F.2d 1289, 1293 (D.C.Cir.1972).

8. The Fair Labor Standards Act (FLSA) requires that a civil enforcement action be commenced within two years after the cause of action accrued, except that a cause of action arising out of a "willful" violation may be commenced within three years. *McLaughlin v. Richland Shoe Company*, 108 St. Ct. 1677, 486 U.S. 128 (1988)

9. For the three-year limitations period to be applicable to actions arising out of "willful" violations of Fair Labor Standards Act, the standard of willfulness adopted in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S. Ct. 613, 83 L.Ed.2d 523, is that employer either knew or showed reckless disregard as to whether its conduct was prohibited by the statute, must be satisfied. *McLaughlin v. Richland Shoe Company*, 108 St. Ct. 1677, 486 U.S. 128 (1988)

10. To constitute a willful violation of the FLSA, employer's conduct has to be more than merely negligent. *McLaughlin v. Richland Shoe Company*, 108 St. Ct. 1677, 486 U.S. 128 (1988)

11. A willful violation of FLSA for limitations purposes requires that employer acted recklessly; at least, it is not sufficient that the employer acted unreasonably. *Claeys v. Gandalf LTD.*, 303 F. Supp. 2d 890 (U.S. Dist. S.D. Ohio, 2004)

12. In determining whether the two-year statute of limitations bars a portion of Plaintiffs' claims, the Court must first examine when his claim accrued. When a plaintiff alleges a violation of the FLSA based on a failure to pay overtime wages, each paycheck that fails to include wages for overtime constitutes a separate violation. Consequently, a new cause of action accrues with the receipt of each paycheck. *Archer v. Sullivan*

*County,* 129 F.3d 1263, 1997 WL 720406 at *2 (6th Cir.1997) (unpublished) (*citing Halferty v. Pulse Drug Co., Inc.,* 821 F.2d 261, 271 (5th Cir.), *modified on other grounds,* 826 F.2d 2 (5th Cir.1987)); *Knight v. Columbus,* 19 F.3d 579, 581 (11th Cir.1994). As such, even if an employer continuously fails to pay overtime wages during the course of employment, each paycheck constitutes a separate violation, and claims based on any paycheck that falls outside the statutory period are barred.

13. Any claim in the instant action for overtime prior to June 27, 2012 is barred unless the Court determines that Defendants' violation of the FLSA was "willful." *Claeys v. Gandalf LTD.*, 303 F. Supp. 2d 890 (U.S. Dist. S.D. Ohio, 2004)

14. This case involves an alleged series of repeated violations of an identical nature. Because each violation gives rise to a new cause of action, each failure to pay overtime begins a new statute of limitations period as to that particular event. *Knight v. Columbus*, 19 F. 3d 579, 581 (11th Cir. 1994)

15. The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

16. The question of whether a particular situation is an employment relationship is a question of law. *Fegley v. Higgins*, 19 F.3d 1126, 1132 (6th Cir. 1994)

17. The remedial purposes of the FLSA require the courts to define "employer" more broadly than the term would be interpreted in traditional common law applications. *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir.1991) (quoting *McLaughlin v. Seafood, Inc.,* 867 F.2d 875, 877 (5th Cir.1989) (per curiam)). In other words, the employment relationship determination "is not fixed by labels that parties

may attach to their relationship nor by common law categories nor by classifications under other statutes." *Powell*, 339 U.S. at 528, 70 S.Ct. 755

18. The Sixth Circuit has held that "employees are those who as a matter of economic reality are dependent upon the business to which they render services. *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984)

19. The "economic reality" of the relationship between a plaintiff and a defendant "determines whether their relationship is one of employment." *Solis v. Laurelbrook Sanitarium & Sch. Inc.,* 642 F.3d 518, 522 (6th Cir.2011) (citing *Alamo,* 471 U.S. at 301, 105 S.Ct. 1953).

20. This "economic reality" standard, however, is not a precise test susceptible to formulaic application. *See Donovan v. Brandel,* 736 F.2d 1114, 1116 (6th Cir.1984).

21. The "economic reality" standard prescribes a case-by-case approach, whereby the court considers the "circumstances of the whole business activity," *id.; see Dunlop v. Dr. Pepper–Pepsi Cola Bottling Co. of Dyersburg, Tenn.,* 529 F.2d 298, 301 (6th Cir.1976) (stating that in applying the economic reality standard, "the authoritative decisions require that the courts consider the total relationship rather than isolated factors"). Relevant factors to consider may include whether the plaintiff is an integral part of the operations of the putative employer, *Dr. Pepper–Pepsi Cola,* 529 F.2d at 301; the extent of the plaintiff's economic dependence on the defendant, *id.;* the defendant's "substantial control of the terms and conditions of the work" of the plaintiff, *Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973); the defendant's authority to hire or fire the plaintiff, *Braddock v. Madison Cnty.,* 34 F.Supp.2d 1098, 1107 (S.D.Ind.1998) (citing *Barfield v. Madison Cnty.,* 984 F.Supp.

10

491, 497 (S.D.Miss.1997)); and whether the defendant maintains the plaintiff's employment records and establishes the rate and method of payment, *id.* Consistent with the case-by-case approach prescribed by *Donovan,* these factors are not exhaustive and " '[n]o one factor is dispositive; rather, it is incumbent upon the courts to transcend traditional concepts of the employer-employee relationship and assess the economic realities presented by the facts of each case.' " *Dole,* 942 F.2d at 966 (quoting *Donovan v. Sabine Irrigation Co.,* 695 F.2d 190, 195 (5th Cir.1983)). As cited in *Ellington v. City of East Cleveland*, 689 F.3d 549 (6th Cir. 2012)

22.  The "economic reality test" as established by the Sixth Circuit in *Donovan v. Brandel*, 736 F.2d 114, (6th Cir. 1984) includes the following six factors:  (1) the permanency of the relationship between the parties; (2) the degree of skill required for the rendering of the services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon his or her skill; (5) the degree of the alleged employer's right to control the manner in which the work is performed; and (6) whether the service rendered is an integral part of the alleged employer's business.

23.  Pursuant to the factors enumerated in *Donvan, v. Brandel, supra*, (1), the permanency of the relationship between the parties is indicative of an employment relationship; (2) Plaintiffs skills were not exercised in an independent manner; (3) the Plaintiffs had no investment in equipment or materials for the task; (4) the Plaintiffs had no opportunity for profit or loss, depending upon their skills; (5), the employer maintained the right to control the manner in which the work was performed; and (6) the services rendered by the Plaintiffs was an integral part of the employer's business.

24. The FLSA provides for liquidated damages in an amount equal to the actual damages. 29 U.S.C. § 216(c).

25. Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (1998).

26. Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (1998).

27. Liquidated damages under the FLSA "'are compensation, not a penalty or punishment.'" *McClanahan v. Mathews,* 440 F.2d 320, 322 (6th Cir.1971) (quoting *Overnight Motor Co. v. Missel,* 316 U.S. 572, 583, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942)); *see also Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)

28. The Portal-to-Portal Act provides a limited affirmative defense to the liquidated-damages provision. The trial court may, at its discretion, reduce or eliminate the liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to the action was in good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the [FLSA]." 29 U.S.C. § 260.

12

29. Because the employer has demonstrated to the court that the act or omission giving rise to action was in good faith and they had reasonable grounds for believing that their actor omission was not in violation of the FLSA, the Court eliminates liquidated damages.

30. *Dole v. Elliott Travel & Tours, Inc*. 942 F.2d 962, 967 (6th Cir 1991) recognized that the liquidated damages issue is "closely related" to the willfulness issue. 942 F.2d at 967. Absent a good-faith disagreement with the authority of the government to promulgate the statute, a finding of willfulness is dispositive of the liquidated-damages issue.

31. The Sixth Circuit has held that a violation of the Act was willful when undisputed evidence showed that the employer "had actual notice of the requirements of the FLSA by virtue of earlier violations, his agreement to pay unpaid overtime wages, and his assurance of future compliance with the FLSA. *Elliot Travel, supra*, at 967.

32. The Defendants' violation of the Act were not willful because the employer lacked any notice of the requirements of the FLSA by virtue of earlier violations; Defendants had made no previous agreements to pay unpaid overtime wages which were not honored; and they made no previous assurance of future compliances with the FLSA.

33. The FLSA's normal two year statute of limitation is applicable to the Plaintiffs' claims, as the Defendants' violations of the FLSA were not willful.

34. An award of attorney fees to a prevailing plaintiff under § 16(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 501 (6th Cir.1984).

13

35. Since the FLSA does not discuss what constitutes a reasonable fee, "[t]he determination of a reasonable fee must be reached through an evaluation of a myriad of factors, all within the knowledge of the trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees." *Fegley v. Higgins, 19 F.3d 1126 (6th Cir. 1994)*

                                        Respectfully submitted,

Date: August 10, 2015                   /s/ Kim A. Higgs
                                        Kim A. Higgs
                                        Attorney for Defendants
                                        1001 Center Avenue
                                        Bay City, Michigan 48708
                                        Tel: (989) 892-0114
                                        FAX: (989) 892-0118
                                        Kimhiggs@aol.com
                                        P25376

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I caused a true and correct copy of the foregoing to be served electronically upon all counsel through the Court's Electronic Filing System.


Dated: August 11, 2015                    /s/ Kim A. Higgs_____
                                          Kim A. Higgs
                                          Attorney for Defendants
                                          1001 Center Avenue
                                          Bay City, Michigan 48708
                                          Tel: (989) 892-0114
                                          FAX: (989) 892-0118
                                          Kimhiggs@aol.com
                                          P25376

15